The next final case for argument this morning is 22-1475 Moore v. United States. Good morning. It's been a while. Nice to see you again, Mr. Broda. Nice to be here. Nice, as they used to say, to be anywhere at my age. Thank you. Please proceed. Thank you. Good morning. May it please the Court, Peter Broda for Tim Moore. When this all began, I thought it was going to be a relatively straightforward, simple case in the claims court. I was wrong, often wrong. So we end up here with a case that goes well beyond the significance of Mr. Moore's case, significant as it is. All federal employees with Equal Pay Act cases have to show up if they're going to be in court in this court, unless it's a very small claim that might end up in the United States District Court, often combined with a Title VII case. There's a lot going on in this case. So for my personal, I'd like to ally the Yant question, which my colleagues may have questions about. Yes. And I'd like to deal with something that the Court of Federal Claims didn't do, which is the pleadings in this case, and whether you've effectively pleaded your way out of court because you've made the case for the other side, the government, in terms of a non, what is this, I'm trying to look for the statutory language, of something other than discrimination, of a motivation. Yes, something other than sex. Other than sex, yes. It seems to me that they've got an argument. So I'd like to give you a chance to respond. Sure. You've got your two comparators. So this is a three-part question. The first part is you've got your two comparators. This is what happened in the first round in 2014. They applied, as you allege, and your client didn't. Seems to me maybe that is arguably enough to say you've pleaded your way out of that complaint. Then you've got the second period of the remainder of the year where they extended the program, but you haven't alleged any comparators for that period. So I don't even know if that period matters in terms of not having competitors. And third and finally, it seems like your real answer to this, or one of your main arguments, is that rather than what seems arguably sensible in most contexts is making employees apply for something, you say, no, no, no, that was a problem. They didn't have to, they shouldn't have made them apply. They should have just gone to his file. That seems to me a little odd. Maybe I'm missing something, but this program was open to all agency employees, and it's got to be that quite a large percentage of those employees knew they didn't qualify and or wouldn't be interested in this. So to say that the agency somehow did not have a legitimate business purpose in asking employees to apply, as opposed to going through the resumes of however many hundreds of employees on its own, seems odd to me. So why don't you, I assume you understand what I'm saying. I understand exactly what you're saying. And why don't you respond. Sure. And of course, recognizing exactly the questions you raised, I placed them into the complaint itself to say that the reasons offered by the commission, the Securities and Exchange Commission, for not honoring this gentleman's request to be placed into the pay transition program, were not justified by a legitimate reason. I recognize that these defenses would apply. And what I was expecting, I was hoping I was wrong, was the claims court would say, all right, you go develop your evidence as to whether these are legitimate business reasons, and the government, either through summary judgment or on trial, will have the opportunity to refute any notion that they're not. And as I noted in my, I think it was particularly in my reply brief, the question of whether there is grounds in an Equal Pay Act case to look at legitimate reasons, as opposed to any reason at all, legitimate or not, is a matter of division among the circuit courts. There are two circuit courts to say yes, two circuit courts to say no. And this court has not offered an opinion, as far as I know. And that's on the question of whether or not they can offer any business reading reason, and it doesn't have to be legitimate? Yes. Yes. Well, what's, on its face, why aren't these legitimate business reasons? For any normal person reading this complaint, you have a program, the union and the employer agreed to set up this program, and they put a timeframe on it, and they told people to apply. What is, where is the, even the sense of any plausible illegitimacy in asking people to apply? We do veterans appeals all the time, and even when there's a change in statute, so all these people who have claimed Agent Orange suddenly are eligible, we still make them reapply. We don't make the government go through every single veteran's file to see if they might have a claim. So how is that illegitimate, not legitimate, on its face? I don't think it's wrong to ask employees to express an interest. Mr. Moore expressed an interest. He expressed an interest to his managers, and I'm going way beyond the claims court opinion here, but if you look at the complaint itself, he expressed an interest to his management. He expressed an interest to the chief human capital officer, basically the HR officer. Are you talking about at the time, or are you talking about two years ago? No, Your Honor, I'm talking about two, approximately two years later, September, August, September. Yeah, but the program was for a particular time. So that's another question. I think that's a very good question. Can you limit people to a particular period of time to examine an Equal Pay Act claim? I don't think so. What the Securities and Exchange Commission did, whether they were intending to do this or not, was to freeze a certain number of people into an opportunity to achieve higher pay, and you're right. A lot of people applied, 1,600 people, plus or minus. I may have the figures off slightly. Applied, and many of those, I'd say probably 70 to 80%, maybe a little less, were able to substantially increase their income at an agency that already pays reasonably high salaries. And there's no allegation that anyone who tried to apply later got it, right, after the time it closed, or even after these other women. There were. I think the government has suggested in their Inspector General Report, which is part of the appendix, that a few people did not apply on time. They were given leave to apply later because at the time set for the applications, which was relatively short, it was a couple of weeks, they were on sick leave or maternity leave. I'm not saying the Commission acted in a vicious way here. No. But what they did was to freeze these wages, and the Equal Pay Act responsibility of federal statute is a continuing obligation to pay equal pay for equal work. So your argument is that by making this not a permanent, that they were required to make this permanent, and there's no legitimate purpose to having made this limited to a particular year? That would be our argument, that the obligation to pay equal pay under the Fair Labor Standards Act is permanent. It's ongoing. An employer can't say, I'm going to adjust wages now and ignore equal pay application later. I don't think that can be done. It's not waivable by the employees. The Supreme Court has decided that with respect to the Fair Labor Standards Act, not the Equal Pay Act. It's an ongoing obligation. So when you get the legitimate business purpose, this was something that I expected to raise and develop in front of the claims court through evidentiary development, which I didn't get a chance to do. There's been no discovery there. So these are questions that I think are appropriate for the trial court, but they're not yet before this court, Your Honor. My concern here, of course, we have authors of two concurring or separate opinions in the Yant case and the Gordon case, expressing the opinion that Yant was not correctly analyzed as to a basic equal pay act. Just to be clear, this is completely random selection. Nothing put us on here other than honestly. I believe in coincidence. For sure. I'm not suggesting otherwise. We are also required to abide by the majority opinion, irrespective of our own views. The Gordon opinion creates other problems because it was vacated. I looked but could not find a decision from this court that explains what value, if any, to apply to a vacated, otherwise precedential decision. And the decisions of the Supreme Court and other courts are at best not particularly reasonable. Well, there's concurrences, so it's not the way. We're all required to abide by the majority opinion in Yant. In Yant? Yes. And our argument here, of course, is that Yant is distinguishable. It's not a basic comparator-to-comparator case. I considered whether I think it's under Rule 35 for an en banc consideration. This case ought to be en banc, and it takes a lot of work and a lot of judges to do that, and I think it can be avoided through a decision that distinguishes Yant as basically a class action. Or avoided by going on a separate ground, which I think is where the government is trying to lead us. Yes, exactly so. And could you address that separate ground? Because I know you had a lot to say, and I appreciate that, but I want to make sure I understand your argument on the non-Yant grounds. Why aren't Paragraph 7 and 8 of your complaint essentially the rare instance where you have pled the affirmative defense that this was not based on sex, and therefore, at least if this remains the operative complaint, the claims court was right to dismiss? All right. I'll address the question in reverse. The claims court relied upon Yant because it decided that it was bound by Yant, as applied by Gordon, which Gordon was really a basic comparator-to-comparator case. Once Gordon's out of the picture because it's vacated, you're left with Yant, which is more of a class action. You're talking about two groups of people, two different occupations within a large organization. This is a very simple case. It's comparator-to-comparator. This is the traditional comparator case under the Equal Pay Act. The Supreme Court's decision in Corning Glass, the statutory language of 206D, makes it absolutely clear that all we have to do is show a disparity, and then the government has the responsibility for coming up with the affirmative defenses. And the affirmative defenses, as you've recognized or some of you have recognized in your opinions, should not be conflated with the basic obligation to flee. But putting Yant aside, even if we had the power to vacate Yant, the affirmative defense from your complaint is your client didn't apply for the pay change, and other people did. Those who applied got it, and those who didn't apply didn't get it. That's right. So if we take that as true, you have failed to state a claim, because you've shown that the decision was not based on sex in any way. With respect, Your Honor, only if you take that one step further and look to determine whether the reason, the non-application, is a legitimate business reason, if you are of the opinion of a couple of the circuit courts that any reason will do, then you're absolutely correct. We don't stand much chance here. But that's not a decision from this court, and the other circuit courts are divided on the opinion. But you prevented the Court of Federal Claims from reaching that decision or addressing it. I don't know if they would or not. But as I see Judge Stark's question, you plead your way out of court. Well, I don't think so. Well, with respect, I don't think so. It certainly would not be my intent as counsel for a plaintiff to plead my way out of court. That wouldn't be a very good way of staying in business, Your Honor. The point there, I have to be candid with these courts, the trial courts, any place. And we are coming into this case. There had been an EEO inquiry. That was not completed. We shifted over to the claims court. But I wanted to be clear to this court that there have been reasons offered by the Securities and Exchange Commission for not honoring this man's application. And I explained that in the complaint. I don't want the complaint supposed to be clear and concise and brief. I don't want it to be so brief that it doesn't fairly state what has occurred here. But the concept was that at the claims court, we would litigate the legitimacy of the reasons offered by the commission, both at the time that Mr. Moore saw help from the chief human capital officer and eventually from the EEOC through the agency's EEO process. We would show that they were not legitimate reasons. Let me ask you, under the banner of no good deed goes unpunished, do you think, I mean, if you had seen this coming, in terms of, take the ant off the table completely, if you had seen this coming, do you think the law would allow you to amend your complaint to take out what you for legitimate and very appropriate reasons decided to include? But if you were to come back tomorrow and amend your complaint and take out everything other that you say, other than, they get paid this much and my client doesn't, would that work? Yeah, that could be done. I don't think, if I had to do it again, listening to this, I suppose I would do that. I'm not giving you advice. I don't even know, I haven't researched this, so I don't even know how that works in terms of, you may have dug yourself into a hole, I just don't know. But the court didn't, if the court had suggested, the court wouldn't have suggested, it depends on how this would have arisen. Right, in the absence of Yant, we don't know how it would have gone down with the Court of Federal Claims. She may have converted it to a summary judgment. Yant, after all, was a summary judgment case. All this was, was a test of the sufficiency of the allegations under Corning Glass and the Equal Pay Act of the disparity explained in the complaint. Now, I am supposed to give a short, concise statement of facts in a federal complaint. And that's what I did. And what I explained here was the process that the SEC had gone through and our belief that they would not survive as affirmative defenses. I wasn't pleading these as facts as part of the prima facie case. I was explaining what the commission's approach to this was and why it was wrong. But, yes, if I had to amend the complaint to avoid the suggestion that I conceded in the complaint itself the sufficiency of the government's case, I would do so. But I still believe I drafted the complaint fairly and honestly and candidly to state the basic facts of the case. I did not want to mislead this court. And when I say this court, I mean the Claims Court. And as you said a few minutes ago, your allegations in this regard depend on our adoption of the standard of a legitimate business reason versus a business reason at all, right? I'm sorry, would you repeat that, Judge? I thought you had acknowledged early on that your prevailing on this issue would depend on our adopting a standard for a legitimate business reason as opposed to a business reason. If that were before the court, I'd be arguing it now, yes, but that's not the basis of the disposition by the Claims Court. My friend and I have not briefed that other than for me to mention that there are divisions in the circuits. And Corning didn't enlighten us on that issue? No, ma'am, Corning did not. We don't get very many EPA cases. I haven't read all of those cases in a while. All right, unless my colleagues have anything for you at this time, why don't we hear from the government and then we'll restart. Thank you, Your Honor. May it please the Court. Mr. Moore's appeal should be denied and the trial court's decision should be affirmed because Mr. Moore failed to allege sex as a basis in his complaint. Therefore, it fails to state a claim. The case here, it's implausible for him to recover because the liability in this case doesn't turn on sex at all. It turns on Mr. Moore being admitted. So you're back to Yant? We don't have to touch Yant at all. This is firmly and twombly in Iqbal territory because the Equal Pay Act says that pay between sexes, okay, where there's a situation where an employer is paying employees differently based on sex, that is outlawed, okay? That is what the trial court actually based its decision on. So if you look at the opinion... So for an Equal Pay Act claim, he has to what? Allege what? Does he have to just say, and this disparity was based on sex, is that what's missing? Or does he have to state it even further? The Equal Pay Act is sort of... Well, I have a different view maybe than Yant, and we obviously have to abide by what a court said in Yant. But really, what did he have to say? I mean, just to allege this was based on sex? I think you hit on all of your questions before I hit on it. If you say that in this situation, the reason that I am not receiving the same pay as these female comparators is not because of sex. It is simply because I wasn't allowed to be into this pay transition program. Then you can't infer that sex is a basis, and that is the point of the EPA. The EPA was amended. It was added to the Fair Labor Standards Act in 1963 to try to remedy the imbalance between certain employees, women back in those times, not receiving the same pay as men for doing the same or similar jobs. So the basis of what Congress was trying to do was trying to make sure that pay wasn't given to one sex versus the other based on that basis alone. As I understand the EPA, and maybe you do much better than I, if one comes in and alleges a comparator, I'm a girl and I make this much and these boys make more than me on the tennis team, then the burden shifts, and I think it's even the burden of persuasion, not just rejection, to the government to establish. So it's not like I have to affirmatively prove as part of my prima facie case that it was based on sex. I show the comparators, which are based on sex, at least those, and then the burden shifts to the government to come up with any one of these four factors. Am I missing something about that? No, you are absolutely correct. So what did he, as part of his prima facie case, have to show with regard to sex in the complaint itself? What he had to say, Your Honor, is that sex was a basis. What he has said here is that sex is absolutely not a basis.  So in your example, Your Honor, you say that the men received more money than I did in my job. And so if you say that, right, you're saying affirmatively that these men are making more, that's going to come under the EPA because they're doing the same or similar job and you're getting more money. If you affirmatively say that these men are making more money than me, but it's not because of their sex, it's because they were in a program... of the complaint in its entirety. Because whereas in those earlier paragraphs he says they applied for this program, he didn't apply, you've got paragraph 17 of the complaint, which goes through all of that and says there's not an acceptable business reason and the pay is not... So he makes that argument. He doesn't use sex, but that's not his burden. You have to show that there's not a legitimate business purpose, that there is a legitimate business purpose. And he at least alleges in six parts or five parts that there wasn't with respect to each of what you did. So why hasn't he... I kind of take your point at the surface level, but I'm not sure how it plays through at the complaint stage where the prima facie burden on him is really low. So the difference is, Your Honor, when he... And you talked about it a little bit earlier when you were talking to Mr. Broida. When he affirmatively says in paragraphs 7 through 10 that the program, the program is what the ill is here. It's not about the female employees that are making more money at all. That has nothing to do with it. If Mr. Moore was allowed into the program, then he wouldn't have issue with anything else. That is why the sex has to be pled or has to be at least acknowledged in this case. When you look at paragraph 17, this is a simple recitation of the statute. And as we know, that's not going to be enough to overcome. Well, I don't think it's a simple recitation of the statute. It's quite detailed in terms of going at all of the things that we think he's fled his way out of the court because of those earlier paragraphs that talk about the need to apply and he failed to apply. And this goes through in detail saying, no, no, no, those were not legitimate business reasons. And therefore, we're left with an EPA allegation, right? I mean, don't you read those, read paragraph 17. It goes through each of the things that I think we would agree. If you read the first paragraphs, you say, whoa, he's talked about a non-sex-related reason for this. But then when you get to 17, clearly his position was that all of the, everything the government did was not for an acceptable business reason. And if he were right about that, let's assume there's enough pleading here and we get to at least summary judgment, if not the final stage. And you come up and your defense would be there's a legitimate business reason or a business reason. And let's assume you lose on that. He will win on his EPA claim, not for having made a case that this was based on sex, but rather that your arguments for it, given the comparators, was non-legitimate business. Is that the way the law would work? Not necessarily. You first have to have that burden move. The burden in this case has not moved from the plaintiff to the defendant. And what is required under a prima facie showing? I mean, well, we know what Yant, but if you can avoid what Yant says about that. We don't need to touch Yant at all because you can say one of two things. You can say that these female employees are making more money than me and I don't know why. Or you can say these female employers are making more money than me because they're female. But if you come out and say, Your Honor, that these female employees are making more money than me under the EPA guise, but it's not because of their sex. The only reason they're making more money is because I didn't timely apply for this program, then it doesn't come under the protection. The burden never shifts to the affirmative defenses. Well, there's another option. Would it be sufficient for him to say, These female employees are making more than me, period, without saying because of their sex? Would that be sufficient? That's why I said that's one of them. It's possible you could say that and then the burden shifts, obviously, to then the four affirmative defenses. But as all of you have stated, did you plead your way out of court? The answer is yes. If you come out and say, I'm going to sue under the EPA, which is designed to protect wage imbalances based on sex. But wait a minute, Your Honor. It's not because of sex. It's because of this program. Well, what about... Go ahead. The way I read the complaint, he says, Why can't you read the complaint that says, These women are making more than their male counterpart. The agency's reasons for this are because they created this program and you have to apply and he didn't apply. None of those reasons represent a legitimate business purpose. Wouldn't that be sufficient? Not necessarily, Your Honor. We're not there in terms of... This is why I say we're in Twombly and Iqbal. You have to have played the basis of why the statute would apply. We're not moving into legitimate business purpose of whether you have a seniority system or whether you have a merit system or quality quantitative production or other than sex. We're not there. And that's what the trial court said. We're not there because you said that the reason why you're not receiving higher pay has absolutely nothing to do with why you filed it under the statute. He didn't say that. He says the agency did this but their reasons for doing that were all bogus. They didn't have a legitimate business purpose. So he's not saying, yes, the agency set up a perfectly fine and legitimate application program and my client didn't. He doesn't say that. He says the agency set up a program under which these women are getting more than my client and that program had no legitimate business purpose. That would be fine, Your Honor, if he was in that part of the statute. He's still in the first part of the statute where he says clearly this has nothing to do with sex. So if it has nothing to do with sex, then how do you move to the affirmative defense? You're already out because the reason we're here to listen to your case is because allegedly you've said that there's a pay imbalance based on sex. Judge Rayna had a question. This goes to whether there's been a pleading out of court, as we've been saying. If Moore has brought a complaint under the Equal Pay Act and cites the act and then attempts to get in by making the allegations that he did, couldn't we have a claim based on sex still lurking in the background? Isn't this still, at bottom, a Equal Pay action? And what he has done, what Moore has done, is they've stuck their toe in the door and that door is still open. And on the other side of the door, now he'll be able to plead out more on the traditional EPA claim. I would suggest no, Your Honor, and here's why. If you were to infer that sex was the reason or a basis for why there's pay imbalance, Mr. Moore would raise his hand and say, that's not correct, Your Honor. It's not because of sex. The reason they're getting paid more is because they got into the program that I didn't apply for. So the court would be inappropriate to try to make a claim or to infer a claim that there's actually sex when Mr. Moore says, no, there's not. The reason I'm advancing this case is because I am not getting the same pay as them, but not because they're women. I'm only not receiving it because they timely applied and I missed two deadlines to apply. And so that is why, and this case is, that's why I said we don't have to touch anything else. This case's facts are so different than most cases. There's no reason or basis to infer that sex is a part of this at all because Mr. Moore has said that the program was open to everyone, that the reason that these... I take your point. Oh, go ahead. Can I just ask you one other question? Sure. I think the challenge or the difficulty that we're having is because my understanding of what went down below, it was Yant plus Yant plus Yant plus Yant. And so the District, the Court of Federal Claims didn't examine the kinds of, what we've been talking about here for 20 minutes now, about the sufficiency of the pleadings and when he plowed himself out of court, yada, yada, yada. Assuming, hypothetically, either Yant would be overruled or we would say that Yant is distinguishable and I think both sides give arguments that we don't have to apply Yant, wouldn't the most appropriate course be to send this back to the Court of Federal Claims to, hear me out before you shake your head, send it back to the Court of Claims because we don't have the benefit of the Court of Claims analysis. And after all, this Iqbal Tromley motion to dismiss stuff always comes to us based on the Court of Claims having done something and we review it and maybe some of the findings are even reviewed for an abuse of discretion. So I think we're struggling here on an argument that was not posed to the court below and not addressed by the court below. So if you look at the fourth page of the Moore decision, it's the very last paragraph, where the court says, because the complaint affirmatively acknowledges that no sex-based discrimination caused a difference in pay between Mr. Moore and the two female comparators, plaintiff does not state a prima facie violation. So they went through Tromley and Iqbal about what has to be pledged. They did touch on Yant, but Yant is really not the focus of what their opinion is. It really is the focus on what Mr. Moore has said Mr. Moore says, as I've said repeatedly, don't want to go overboard too much, but that sex is not a part of his complaint at all. It's a simple vehicle to get into court. And so that's why. If we could come back to the business purpose that may or may not exist for this program, is Mr. Moore alleging, or could his complaint be read as alleging, that the illegitimate business purpose is one that is based on sex? Relatedly, would you say that that's what he would have to do in order for him to still have an EPA claim? Let's just say it turned out, it's hypothetical obviously, it was just a pure budgetary, arbitrary budgetary decision to cut it off after two weeks or whatever it is. Not based on sex, based on budget. Maybe even false understanding of a limited budget. Would that somehow allow this to be a sex-based claim under EPA, or would that just be, he may have some other claim, but it's not based on sex? I think that one still moves, there's an assumption that the burden has moved over to the defendant to plead the four affirmative defenses. I have assumed that, but just play that out. So if it's there for a budgetary reason, then no, the burden wouldn't move, because sex is the reason why you're advancing a claim through this vehicle. So you're saying you have to say, or you have to at least have something where the court can infer that sex is the reason why you're alleging the pay imbalance. But if you're affirmatively saying that sex has absolutely nothing to do with it, and this statute is about protecting wages based on sex, you can't move. So if the case played out and there were an illegitimate business reason, but the illegitimacy had nothing to do with sex, does the government win that case under the EPA? The government would win that case with the other than sex defense, which is what most of these cases are about. They're usually other than sex is what the defense is. But what I was saying is, we don't even get to the affirmative defenses, because you haven't used the proper vehicle to allege why the program should be open to you. If you're saying that sex in this situation is not a part of your calculus when you file the complaint, that is what the EPA is for. And if you don't have that, then you haven't come off of your burden to move it. The burden is very low, there's no question, but it's still a burden, and you still have to say that sex is somehow involved in your case in order for it to move. And if you don't do that... Am I identifying... I mean, there's very little for a prima facie case, leaving aside the aftermath. Sure. He alleged... I don't think there's any dispute, he has to find comparators that are of a different sex. Isn't that sufficient? And then could he globally say, and therefore we satisfy the requirements of the EPA, right? Normally, that would be the case, Your Honor. He would say, these women are making more money than me, and the court would go, oh, okay, that's enough, let's move it over to the... Okay, so he doesn't have to say, and he doesn't have the burden or any showing that that is based on sex. He could just say, look, these women have another sex than me. That's correct. Okay. But that then permits the court to infer that, oh, maybe the reason you think so is because of sex, that's why you think so. But if the court were to do that in this situation, it would be inappropriate, because the court would say, okay, maybe it's because of sex, and then Mr. Moore, from his complaint, would say it's not because of sex. It's because they won't let me in the program two years after the fact. And you go, well, wait a minute. Does it have anything to do with what the EPA is designed to protect? You say, well, they're making more money than me, but it's not because of their sex. But what if he had pleaded virtually nothing? I mean, just the minimum. Prima facie case. And clearly the burden would shift to you to say there's a legitimate business reason. And what if you fail? He wins, right? You cannot establish that these programs, which we all know existed, he felt like it was his obligation not to hide the ball. But all he has to show, or all that you actually have to show, is that there was not a legitimate business reason You have to show there was a legitimate business reason. That's correct. You have the burden for this limited time application program and for requiring people to apply themselves. So you have to show that. So the only thing he did wrong here was not put the words because of sex here? No, no, no. He affirmatively stated... Yeah, but he stated these things happen for reasons other than sex. But then he said those things don't have a legitimate business purpose. Sure. And isn't that the dispute here that we would be litigating at whatever stage we're in? If only in the second stage, not in the first stage. Because the other than sex is an affirmative defense. Right? We're talking about still in his burden section. His burden section. That's why this doesn't have anything to do with Yann or any of these other cases. This is Twombly and Iqbal. Have you given the court taking the four corners of your complaint as true? Right? Is it plausible that you could recover? Is the misconduct something that the court could infer? And the answer to that looking at the four corners would be no because you have said that the reason why you're advancing this case has nothing to do with sex. Counselor, just now when you say that he... the reason he said... I've heard you say on two prior occasions that he affirmatively said that. He said that the disparity was not based on sex. Show me where he affirmatively said that. So in paragraph... Let me go to the complaint, Your Honor. It's paragraph 7 through 10. Of what? The complaint? Of the Court of Federal Claims complaint. Do you have a page set? It's appendix 3. I didn't bring the... I didn't bring that part with me. It's appendix 59 also. Oh, okay. Also. Perhaps. Paragraph 7 through 10, right? Okay, so employees... All employees, if you look at paragraph 5, all employees were allowed to participate. We also have... You can hear. That itself does not... say that he affirmatively said that disparity was in no way based on sex. It says the complaint does not claim that any difference in pay. So there was paragraph 7. Both of the comparators applied. Mr. Moore did not apply. And that it was available. So where that mainly comes from, it was available to everyone. And Mr. Moore doesn't allege at all that the program was tilted. He does not say. He does not make an affirmative statement that the disparity was in no way based on sex. He never says that this program was geared to women over men or that women made more money out of the program. Well, he doesn't have to show that. He just has to... You have to show that there was legitimate business reason for him to prevail or he thought competitive. But by stating that, this program was open to everyone and that there was no kind of disparity or unfavorable treatment that he received, that is how you get to the point where he's saying that the program is not an issue at all. Well, he says, though, it's 17C. SEC had no valid basis for creating or not extending a deadline for any employee to apply for and obtain the benefits of paid transition. So he's stating this is what they did. He's not embracing it. He's identifying a reason that on its face seems sex-neutral, but that's not the same as admitting that sex had nothing to do with the decision. Well, as the lower court stated, if, in fact, you say that the program was open to both sexes, then that is saying that the program itself was not tilted or tainted in any way towards a certain sex. And so that's where that comes from. If you say that the program allowed more women in than men or the program somehow in its calculations gave women more money than men, then you can say that I believe... You could probably put that in there and that may be enough to shift that verdict. But if you say that the program was open to all... How about if he says that the program resulted in my not getting as much money as those two and then those two are women? Isn't there an inference there? That could be fair. I think that would be fair. He's showing a disparity in pay, right? Because of the program. Now, I realize this may take us into Yen, but he's already made it in. He's in the door. No, he's not in the door because he's saying that the program was open to all people and it was sex-neutral. If you're saying that the program is sex-neutral, then what is the problem? Then why are we here? How is your burden? I think what Judge Wren is asking, with your metaphor, he's in the door when he says, there's two women who do the same work and are paid more than me. But you say he's kicked out of the door when he later says, there was a program that let them get more money. They applied and I didn't. Would that be a fair mapping of the metaphor of the door to your argument? I would say they didn't get in the door to start with. You have to earn your way in the door. I thought you said it's generally enough to state putting Yant aside, generally enough to say, look, I'm a man. They're women. They get paid more. We do the same work. I don't know why. That would be enough in general, right? Sure, that is correct. So I'd be in the door at that point, but I think you're saying he closed the door on himself with paragraphs 7 through 10. That is correct, Jeremy. Can we just, on Yant, I'm just confused by the government's view of Yant. I guess I understand the argument. Maybe it's only summary judgment or after trial. Putting that aside, does any other court of appeals have the same pleading burden as Yant and should we be reexamining that? I would say we don't need to touch Yant in this case at all. Maybe no need. But you want to ask about Yant? Yeah, what if I was interested? So there's, how do I say this without using colloquialism? Yant, we don't necessarily agree with Yant all the way. I'll say that. And some of it has to deal with what the plaintiffs are required to do at the opening part of their case in terms of saying that there has to be a showing of past or present discrimination. We don't necessarily agree with that part. So that's why we steer clear of Yant. And as you can see, the trust... How can you say that? Wasn't your entire argument before the Court of Federal Claims based on Yant? I mean, I can't find the sheet yet, but in looking at your briefing in Yant and your motion to dismiss, I think it had Yant all over it saying specifically Yant applies to all EPA cases in the circuit and mandates that a plaintiff, blah, blah, blah. Sure, Your Honor. It's... Weren't you urging the Court of Federal Claims to apply Yant and dismiss this case based on Yant? So... That's a yes or no question. Yes, Your Honor. Okay, so how... But it's qualified. So you may not agree with this, but what we're here to do is defend the judgment of the lower court, not necessarily what we, in fact, put in the case. That doesn't answer my... The answer is you pressed Yant as being the basis for the judge to dismiss the case, and that's exactly what he did. I wouldn't say that... You can change your view. You can revisit it. That's all fair game, but we've got to analyze what went down here, and it's... You know, the confusion here with the court... If the government is telling us now, well, we didn't really... You don't need Yant at all for this case, but they, in fact, the only basis for the Court of Claims doing this was the argument made about Yant, the Court of Federal Claims, and here you're coming up with an alternative. I mean, that's true, is it not? Is that not a fair reading of the record? I would say no, and the reason why is we did advance Yant, but we said even if Yant didn't apply, then there's the Twombly-Iqbal. So Twombly and Iqbal still applied at that point. But that's your alternative argument. Your initial argument, your general argument, was Yant, wasn't it? The initial argument was Yant. And you carried this argument all the way through until here recently before the Court of Federal Claims. Not necessarily. Now we don't have to rely on a Yant-based argument. So what's your alternative argument? Is your alternative argument the argument you're making today? It is not. The reason that we relied on Yant in the beginning is because what our point was, the same one that we have here, is that you have to allege sex. Now, Yant goes a little bit further than we would necessarily need to go, but the premise is the same. You have to say that sex is a part of your claim. If you don't, then that burden never shifts. And that's why we used Yant. So when you say, did we press Yant and now are we backing off of Yant, the answer to that is no. What we were pressing was the fact that he affirmatively said in his complaint, from our perspective, that the program was sex-neutral and therefore it could not be under the EPA. That is why we're pressing and we used Yant for that. But we also used Iqbal Twombly to try to signal to the court that the reason we think this should go away is because he's basically played himself out as you appropriately stated. So that's why you see Yant in there and you see Iqbal Twombly at the same time. So hopefully that answers your question. Judge Rana, you appear to be thinking about some things. I'm pondering. All right. We've taken enough time. I think the colleagues have heard the questions. Let's do the other side. Six minutes of rebuttal. Thank you. I appreciate the opportunity to provide rebuttal here. It will be brief. There's so much to be said, so little time. I have one question, though. Could you go to what seems to be the essence of his point? Yes. You have to say the differential in pay here was on the basis of sex. And you did not say a full stop, no prima facie case. No. That's what I understood him to be saying. So what is your response to that? Your Honor, that's absolutely correct. If page appendix 63, which is the last page of the complaint to the claims court, I have to look at this because I'm starting to doubt my ability to draft a complaint. I've been doing this for more than a year. And paragraph 18 says, as a result of these circumstances since mid-2015 and continuing to the present, in violation of the Equal Pay Act, plaintiff has been paid substantially less, it goes on, than the comparators, despite their equal work and so forth. This is a Equal Pay Act claim based on the exact language of the statute. But paragraph 18 doesn't say anything about it being due to sex. Because of sex. And the Equal Pay Act does not require it, Your Honor. If this were a Title VII case, 42 U.S.C. 2000 E2, and oftentimes Title VII cases, of course, are combined with Equal Pay Act cases when they can be in the district courts. 42 U.S.C. 2000 E2, A1, prohibits discrimination with respect to compensation because of such individuals' race, color, religion, sex, or national origin. And then, interestingly enough, to me at least, it incorporates the Equal Pay Act and the Bennett Amendment, but we're not talking about that. So Title VII injects essentially a pleading requirement of intent. Intentional discrimination because of sex. Which is what Yank then did when it started talking about historical or present patterns of discrimination. Essentially injecting, without saying what it was doing, a Title 42 standard into the Equal Pay Act. The Equal Pay Act establishes strict liability subject to these four affirmative defenses. As long as the differential is based on sex. No, Your Honor. I disagree. It doesn't have to be intentionally based on sex and putting Yant aside. What you have to allege at the Prima Facie case that it's due to sex in some way you can identify, that maybe is Yant. But you can't plead an EPA claim without saying something about sex, right? Well, we did mention that the comparators were of a different sex. We didn't exactly ignore it. But the Equal Pay Act under Corning Glass only requires that the linkage between the violation and the sex be established by demonstration of disparate wages. In other words, wages higher for women than men, higher for men than women. In other words, you're saying the statute does use the words discrimination and sex. It says no employer shall discriminate, blah, blah, blah, between employees on the basis of sex. By paying wages. That's what I was just going to say. How do you establish the discrimination between the sex on the basis of sex under the EPA? It's your view that you look to the remainder of that provision that says by paying wages. Having a business reason or something else, right? You establish the discrimination for a prima facie case. This is only the initial pleading going into court. The prima facie case is established by showing a differential in wages. But you might understand your friend's argument has a little heft to it because it goes to what we were asking you when you were first up here about 20 minutes ago, which is haven't you pledged your way out of court because you've essentially alleged what are on their face legitimate business reasons for this pay disparity. In other words, something other than sex. If that is the case, you lose. I'm not admitting that they're legitimate. I'm stating that that's what has been offered as the reasons and that they're not legitimate. I'm challenging that. Well, my client is challenging that. It's poor in the complaint. We're not acknowledging the legitimacy. The question that's going to occur, should this case go back to the claims court? Eventually, that court, possibly this court, will have to determine whether one of these affirmative defenses can be challenged as an illegitimate business reason or not. Two courts of appeal say no. Two courts of appeal say yes. This court has not yet spoken. The Supreme Court certainly hasn't said so. It's an important question, but it's not one that can be decided just on the basis of speculation and argument here. My friend at the Justice Department is doing a great job, but in the wrong court. It's in the claims court where these arguments should be advanced. And your position is what, they would come up under summary judgment? Summary judgment or trial. I don't know how it will go. I think I'm still back at the prima facie case, though. If you alleged, I'm a man, there's two women, we do the same work, they get paid more than I do, and then you're probably good at that point, but if you go further and then say, they get paid more than I do and they're women, we do equal work, but they don't get paid more than I do because they're women, have you stated a claim? Have you made out a prima facie case or have you not? If I... And I'm not suggesting you've drafted it that poorly. If I've pleaded that poorly, I should not be pleading at all. Yeah, I'm not suggesting you did. I shouldn't be here. No, if that were the case, I think as a judge I would look at it and say, what would you like to amend? No, all right, you're out of court. No, I don't, I would agree with you. If that's all there was... Okay, so if that were how we read it, then you've opened the door and closed the door. I'm not saying that's how we read it, but if we did... No, my intent was to provide a plain, concise statement of the claim in candor to the court, providing the essential facts, but also recognizing the argument that the defenses here are not legitimate and that needs to be decided as a matter of law. That was my intent, and I may have failed, but I certainly tried. To what extent, Counselor, did... Because of the shifting of arguments that we're talking about that occurred, to what extent did Yant still affect the ultimate decision of the Court of Federal Claims? Well, I mean, the Court of Federal Claims, in its decision, relied upon Yant. They didn't rely upon... The judge below did not talk about the alternate theories that my friend here in the Justice Department is suggesting. It was Yant amplified by Gordon, both in the... So it wasn't based on a rationale or reasoning that was non-Yant-based. I missed the last three words. It was not Yant-based. No, the court did not go beyond, as I recall it, discussion of Yant and Gordon. In fact, the court explained in a footnote that I had cited a case to the court from the claims court that had recognized Yant, which I did because I'm bound to do so. I have to tell the court its own authorities. But the focus of the claims court judge was on Yant and Gordon, Your Honor. But his position today seems to be very close to that, next to the last paragraph on Appendix 4 of the Court of Claims opinion, where all he says there is the complaint affirmatively acknowledged that no sex-based discrimination caused the differences in pay. And then he cites Iqbal Promlich. Can I catch up with you, please? The last paragraph on page 4. I think that may have been an overstatement by the court of how the complaint was structured. I did not, the complaint did not affirmatively acknowledge that no sex-based discrimination caused the difference in pay. That's the ultimate conclusion of law. Well, I think maybe the judge was relying on the concern we all had about sort of coming up and saying they had to apply and so forth. That's where I think it came from. I thought the complaint was clear. It alleged the disparity, the difference in sexes, the course of development of the disparity, and the fact that the reasons offered, that is, for example, the existence of the program, the application period, the finances, they were not legitimate business reasons. We did not acknowledge that no sex-based discrimination caused the difference. We believe that the Equal Pay Act was violated, and the Equal Pay Act does talk about differentiation of pay based on sex. We will get there, but first you have to examine the affirmative defenses. Okay. All right. Your Honors, thank you so much. We thank both sides, appreciate their time and efforts, and the cases submitted. That concludes our proceeding for this morning.